**Bert H. MACKIE, Norma Pace, John H. Griesemer, Crocker Nevin, Martin T. Runyon, Michael S. Coughlin, U.S. Postal Service, Plaintiffs,**

v.

**George BUSH, in his official capacity as President of the United States, Defendant.**

**Civ. A. No. 93–0032–LFO.**

United States District Court, District of Columbia.

Jan. 8, 1993.

Kenneth S. Geller, Dan M. Kahan, Mayer, Brown & Platt, Washington, DC, for plaintiffs.

Stuart M. Gerson, Leslie H. Southwick, Douglas Letter, Dept. of Justice, Washington, DC, for defendant.

### AMENDED MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs are the majority of the Board of Governors of the Postal Service Board.

The Postal Service is presently a party to litigation pending in the Court of Appeals for the District of Columbia Circuit. *Mail Order Association v. United States Postal Service*, Nos. 91–1058, 91–1059, 91–1063, 91–1065, 91–1073, 91–1074, 91–1075, 91–1079, and 91–1080. The Service is represented in that proceeding by counsel other than the Department of Justice. The Postal Reorganization Act, 39 U.S.C. § 409(d), provides:

> The Department of Justice shall furnish, under section 411 of this title, the Postal Service such legal representation as it may require, but with the prior consent of the Attorney General the Postal Service may employ attorneys by contract or otherwise to conduct litigation brought by or against the Post Service or its officers or employees in matters affecting the Postal Service.

Pub.L. No. 91–375, 84 Stat. 724 (Aug. 12, 1970).

The Department has not consented to representation of the Service by private counsel or to conducting the litigation itself. Instead, it has aligned itself against the position of the Service in the proceeding pending in the Court of Appeals. In addition, on October 27, 1992, the Assistant Attorney General of the Department's Civil Division wrote to the General Counsel of the Postal Service that:

> Because the United States Postal Service and its Governors lack independent litigating authority, *see* 28 U.S.C. § 516, 39 U.S.C. § 409(d), the Attorney General's authorization is a necessary precondition to the filing of such a petition for review by Postal Service attorneys. In this case, authorization was not provided because a lawsuit between the Postal Service and the Postal Rate Commission raises serious justiciability problems under Article III of the United States Constitution. As we discussed with your predecessor, Mr. Hughes, we have grave doubts that the Attorney General could authorize the filing of a lawsuit that he believes is not within the judicial power of the United States courts.
>
> Given the above and after careful consideration, we feel strongly that we can-

not allow this case to continue to be litigated. In our view, the best course of action would be for your office to withdraw the petition for review. Much less desirable would be for the Department of Justice to move to strike the petition on the ground it was filed by attorneys who lacked the requisite authority to file it— an option we may be forced to consider seriously if we have not reached a consensus by Monday, November 2, 1992.

Thereafter, on November 6, 1992, the Postal Service filed a motion in the Court of Appeals for leave to appear as a party and to represent itself. In response, on December 1ª, 1992, the Court of Appeals ordered the Department either "to resolve the controversy between the DOJ and the Postal Service or to file a response to the November 6 motion to enable the Court to resolve itself."

On December 11, 1992, the President of the United States wrote to the Postmaster General as follows:

> I am informed by the Department of Justice that filings have been made in the United States Court of Appeals for the District of Columbia Circuit purportedly on behalf of the United States Postal Service without the authorization of the Attorney General, contrary to 39 U.S.C. 409(d). Accordingly, pursuant to my authority as Chief Executive and my obligation to take care that the laws are faithfully executed, I direct you to cooperate fully with the Attorney General in arranging for the withdrawal of those filings. This directive also extends to the Governors and the Board of Governors of the United States Postal Service, if any action on their part is necessary in order to implement it.

On the same date, a Department attorney advised the Clerk of the Court of Appeals of the President's directive, stating that it must be assumed that this directive resolved the controversy because the Board can be expected to comply.

On January 4, 1993, the Board Chairman, on behalf of the majority of the members, advised the President that in his view the

Board was authorized to maintain its position in the Court of Appeals and asked the President to elaborate on his December 11 directive.

On that date, the President wrote a further letter reiterating his directive of December 11 and advising that:

> in order to obtain compliance with the statutes and my directive enforcing them, I will if necessary exercise my authority to remove Governors of the Postal Service.

On January 6, 1993, White House counsel responded to the Board's letter stating that it would not suffice "to inform [the President] by January 6 of any reasons why the [Board members] should not be removed for failing to comply" with the December 11 directive.

For aught that appears, this controversy should be resolved by the Court of Appeals, or at least that Article III body should have an opportunity to address it. The President's removal of the plaintiffs before the Court of Appeals has had an opportunity to deal with the matter could jeopardize its jurisdiction. Temporary postponement of the President's removal order would not appear to cause any damage to his interest or to that of the United States. On the other hand, removal of the majority of the Postal Service Board, particularly during this period of transition, could be irrevocably disruptive of the Board's function and plaintiffs' legal responsibility for carrying it out, all to the damage of the public interest.

In its opposition to the instant motion and the prayer for injunctive relief, defendant appropriately raises the question of jurisdiction. It is a question not free from doubt. The defendant invokes the opinion of the plurality in *Franklin v. Massachusetts*, — U.S. —, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992), where the Court refused to sanction injunctive relief against the President. However, the plurality opinion in *Franklin* does not appear to preclude the jurisdiction of this Court or of the Court of Appeals in the particular circumstances of this case, for that opinion conspicuously stated that:

> For purposes of establishing standing, however, we need not decide whether injunctive relief against the President was appropriate, because we conclude that the injury alleged is likely to be redressed by declaratory relief against the Secretary alone.

*Id.* 112 S.Ct. at 2777.

Furthermore, it has been firmly established that the courts may exercise authority over the President, by, for example, exercise of the subpoena power, where that exercise is necessary for the performance of the Judiciary's constitutional function. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Burr*, 25 F.Cas. 30 (No. 14,692d) (C.C.Va.1807) (Marshall, C.J., sitting as Circuit Justice). As the Supreme Court stated in *Nixon*,

> neither the doctrine of separation of powers, nor the need for confidentiality ... without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances.

418 U.S. at 706, 94 S.Ct. at 3106.

The ultimate jurisdictional question remains to be addressed. The determining fact is that our Court of Appeals already has under advisement and is entertaining jurisdiction over the underlying controversy, including the motion of the Board, at the direction of plaintiffs. *See Mail Order Ass'n, supra.* The defendant would resolve this pending question, not by causing the Department of Justice to move to strike the unwanted pleadings in the Court of Appeals, but by terminating their service as Governors of what the Court of Appeals may yet determine is an "independent" Board.

■ By entertaining the pending motion and inviting response to it by the Department of Justice, the Court of Appeals has thus determined *de facto* that it has jurisdiction over the subject matter in the form that it has been raised before it. A district court in this Circuit has the responsibility and the authority to protect the jurisdiction of our Court of Appeals, at least to the

limited extent of assuring that that Court has been afforded an opportunity to address the issues pending before it. *See International Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C.Cir.1984) (recognizing "critical role played by district courts in the enforcement of appellate decisions"). This authority is encompassed, in addition to the statutes relied upon by plaintiffs, by the All Writs Act, 28 U.S.C. § 1651(a). That Act provides that:

> all courts established by Act of Congress may issue All Writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.[1]

The plaintiffs themselves invoke the precedents of *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), and *Wiener v. United States*, 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958). In those cases the Supreme Court held that the President's unlawful termination of a Commissioner of the Federal Trade Commission and a War Claims Commissioner were cognizable in a federal court. These precedents tend to confirm the subject matter jurisdiction of a federal court in the special circumstances here.

■ Defendant would distinguish those cases because the remedies sought there were not injunctions, but merely for damages and declarations that the President did not have the legal power to terminate a member of an independent commission due to a policy difference. However, it seems more likely than not likely that in the circumstances here, neither a damages remedy nor a declaratory judgment would provide an adequate remedy. In particular, neither a damage award in the Claims Court[2] nor a declaratory judgment in this Court would afford our Court of Appeals, and thus the Judicial Branch, an opportunity to protect its jurisdiction over a matter pending before it and the several issues lurking there. These issues include whether the Board is an "independent agency,"[3] whether the Executive Branch, including the President, has the authority to direct its policy positions by operation of what may be a mere ministerial requirement that it obtain the consent of the Department of Justice to take a particular litigating position, whether the Attorney General's consent to the plaintiffs' conduct of the plaintiffs' litigation was unreasonably withheld by him (as distinguished from the President), and whether the Attorney General abused his discretion when he withheld consent. The inadequacy of the legal remedies is dramatized by contrast between the circumstances here and those which obtained in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). There a remedy for testing the legality of a presidential action, and thus comity between the coequal Executive and Judicial Branches, was facilitated (whether intentionally or not) by delegation of the execution of the order at issue in that case to an unequivocally suable cabinet officer, thereby avoiding thorny, and possibly extraneous, jurisdictional and constitutional issues. *See, e.g., Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

---

1. The likelihood that plaintiffs can establish the jurisdiction of the Court of Appeals and of this Court (for the limited purpose here) is substantiated by the statement of Professor Laurence H. Tribe that:

> [i]t seems likely ... that an injunction could issue to bar unlawful removal and that the President or an appropriate subordinate could be required by mandamus to reinstate an unlawfully removed officer.

Laurence H. Tribe, *American Constitutional Law* § 4–10 at 250 n. 20 (2d ed. 1988).

2. *See* The Tucker Act, 28 U.S.C. § 1491.

3. It is noteworthy that the Postal Reorganization Act, which abolished the Postal Service as a cabinet level department, reestablished it "as an independent establishment of the Executive Branch." 39 U.S.C. § 201. In doing so, Congress stated as its purpose the establishment of a postal agency "independent of ordinary legislative and executive supervision and control." S.Rep. No. 912, 91st Cong., 2d Sess. 4 (1970). The Supreme Court itself has stated that it was Congress' objective to "remove" the principal officers of the Postal Service from the President's direct control. *National Ass'n of Greeting Card Publishers v. USPS*, 462 U.S. 810, 822, 103 S.Ct. 2717, 2726, 77 L.Ed.2d 195 (1983).

148

Accordingly, an Order entered at 12:30 p.m. on January 7, 1993, treating plaintiffs' motion for a temporary restraining order as a motion for a preliminary injunction, granted the motion and ordered the President to defer their termination.

## ORDER

For the reasons and on the basis of findings stated from the Bench after oral argument and in a Memorandum to be filed, it is this 7th day of January, 1993, hereby

ORDERED: that, treating plaintiffs' motion for a temporary restraining order as a motion for a preliminary injunction, the motion is GRANTED pending further order of this Court; and it is further

ORDERED: that the defendant shall refrain from removing, or causing the removal of, plaintiffs Bert H. Mackie, Norma Pace, John N. Griesemer, Crocker Nevin, Marvin T. Runyon, and Michael S. Coughlin, from their offices as Members of the Postal Service Board of Governors, pending further Order of this Court or the Court of Appeals; and it is further

ORDERED: that, in light of the public interest in this matter, no bond will be required.