**Bert H. MACKIE, et al., Plaintiffs,**

v.

**William J. CLINTON, et al., Defendants.**

**Civ. A. No. 93–0032–LFO.**

United States District Court,
District of Columbia.

July 23, 1993.

Kenneth S. Geller, Dan M. Kahan, Mayer, Brown & Platt, Washington, DC, for plaintiffs.

Karen Stewart, Dept. of Justice, Washington, DC, for defendants.

James V. Stanton, John E. Vargo, Stanton & Associates, Washington, DC, for defendant Ashley.

## MEMORANDUM

OBERDORFER, District Judge.

The dispositive issue remaining in this case is the legality of the January 8, 1993 recess appointment of Thomas Ludlow Ashley to the Board of Governors of the United States Postal Service. On that date, Crocker Nevin occupied that position as a holdover following the December 8, 1992 expiration of the 9-year term to which he had been nominated by President Reagan and confirmed by the Senate on the authority of 39 U.S.C. § 202(b), which continued him in office (for up to one year) "until his successor has qualified." [1] A preliminary injunction entered January 7, 1993 enjoined President Bush from carrying out a threat to remove Postal Service Governors, including Nevin, from office pending resolution by the Court of Appeals of the issue that prompted the President to threaten their removal. *Mackie v. Bush*, 809 F.Supp. 144 (D.D.C.1993).[2]

On January 8, 1993, the day after the President was enjoined from removing plaintiffs, he purported to appoint Ashley without the advice and consent of the Senate on the authority of the Recess Appointments Clause of the Constitution.[3] That clause created an exception to the requirement of the Appoint-ments Clause [4] that a Presidential nomination be confirmed by the Senate as a precondition to the appointment and commission of the nominee.

■ The voluminous briefs and extensive oral argument filed and presented in this final phase of this matter establish that this is the unusual constitutional case which turns on the plain language [5]—indeed one word—of the Constitution: "Vacancies." The President's constitutional power to make a recess appointment depends literally and absolutely upon the existence of a vacancy while the Senate is in recess.

■ Here, the Senate had adjourned on January 7, 1993, to reconvene on January 20, unless recalled earlier, leaving committees in session to consider nominations submitted by a President during that period. In the circumstances here, it is unnecessary to address the elusive issue of when the Senate is in recess within the meaning of the Recess Appointments Clause.

In an apparent effort to avoid the potentially paralyzing effect of a vacancy among the Postal Service Board of Governors that could be created by the expiration of a Governor's term of office and delay in his or her replacement,[6] Congress has expressly provided for the temporary continuation in office of an incumbent whose term has expired, with the powers, duties and privileges of the office of Governor undiminished. It seems plain

---

1. Section 202(b) provides in relevant part: "The terms of the 9 Governors shall be 9 years.... A Governor may continue to serve after the expiration of his term until his successor has qualified, but not to exceed one year."

2. That issue—the independent litigating authority of the Postal Service—has been resolved in plaintiffs' favor. *See Mail Order Ass'n v. U.S. Postal Service*, 986 F.2d 509 (D.C.Cir.1993).

3. The Recess Appointments Clause provides:

   The President shall have power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session. U.S. Const. art. II, § 2, cl. 3.

4. The Appointments Clause provides:

   [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Minis-ters and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.
   U.S. Const. art II, § 2, cl. 2.

5. *E.g., Perpich v. Department of Defense*, 496 U.S. 334, 338–40, 110 S.Ct. 2418, 2422, 110 L.Ed.2d 312 (1990); *see also Coleman v. Alabama*, 399 U.S. 1, 12–13, 90 S.Ct. 1999, 2005, 26 L.Ed.2d 387 (1970) (Black, J., concurring).

6. *See* 129 Cong.Rec. 23,199 (1983) (statement of Rep. Ford) (purpose of § 202(b) is to avoid "vacancies on the Board ... [which] can greatly inhibit the ability of the Board of Governors to perform its functions").

from the express language of the statute that Governor Nevin holds and occupies the office of Governor through December 8, 1993, unless he dies, resigns, is lawfully removed[7] or some "successor has qualified," i.e., has been nominated by the President and confirmed by the Senate. Section 202(b) creates not a present vacancy but a "prospective vacancy," which can only be filled in the manner set forth in the Appointments Clause.[8]

Defendants rely on the decision in *Staebler v. Carter*, 464 F.Supp. 585 (D.D.C.1979), which upheld a recess appointment to a position occupied by a holdover Federal Election Commissioner on the theory that the expiration of the predecessor's term created an immediate vacancy. However, that decision was tied to the specific language of the Federal Election Campaign Act (FECA). FECA's holdover provision states that a Commissioner whose term has expired may serve until his or her "successor has taken office as a member of the Commission." 2 U.S.C. § 437c(a)(2)(B). The absence of the "successor has qualified" language in that context evidences an intent not to create the sort of prospective vacancy that appears to have been contemplated with § 202(b). FECA provides that an "individual appointed to fill *a vacancy occurring other than by the expiration of a term of office* shall be appointed only for the unexpired term of the member he or she succeeds." 2 U.S.C. § 437c(a)(2)(C) (emphasis added). The *Staebler* court relied on this language in concluding that the "expiration of a term of office" must be treated as a "vacancy." 464 F.Supp. at 589–90. In contrast, the analogous provision of § 202(b) compels no such inference. Finally, unlike § 202(b)'s one-year holdover period, FECA establishes an indefinite holdover period. Section 202(b) is therefore not susceptible to many of the concerns expressed by the court in *Staebler*. *See id.* at 599–601.[9]

Viewing the Appointments Clause and the Recess Appointments Clause together and in context, the opinions in *Staebler* and *McCalpin* are not controlling, and, with due respect, are not persuasive. It is apparent that the purpose of the Recess Appointments Clause was to prevent disruptions in the functioning of the government occasioned by periods in which the Senate is unable to perform its role of advice and consent.[10] Congress has filled that gap in 39 U.S.C. § 202(b) by permitting a Governor to remain in office for up to one year while a successor can be nominated and confirmed.

Thus, irrespective of whether the Senate was in a "recess" within the meaning of the Recess Appointments Clause on January 8, 1993, there was no vacancy to be filled by the recess appointment of Ashley and his purported appointment and commission were and are null and void.

It may be that before there can be a final judgment in this case, the incumbent President and the Senate, exercising their authority under the primary (as distinguished from the Recess) Appointments Clause will have qualified, i.e., appointed and confirmed, a successor to Governor Nevin. But, should the appellate courts have a different view of this matter, the intervening appointment of a Senate-confirmed successor to Nevin would not preempt any claim that Ashley may have for compensation for the period from January 8, 1993 until a qualified successor is sworn in. *See Powell v. McCormack*, 395 U.S. 486, 498–500, 89 S.Ct. 1944, 1951–1952, 23 L.Ed.2d 491 (1969). Therefore, a viable case or controversy could survive the imminent accession to the office by a "qualified" successor.

---

**7.** *But see Mackie v. Bush*, 809 F.Supp. at 147.

**8.** *See Nominations for Prospective Vacancies on the Supreme Court*, 10 Op.Off.Legal Counsel 143 (1986); *Presidential Appointees—Resignation Subject to the Appointment and Qualification of a Successor*, 3 Op.Off.Legal Counsel 152 (1979).

**9.** In *McCalpin v. Dana*, No. 82–0582 (D.D.C. Oct. 5, 1982), *vacated as moot*, 766 F.2d 535 (D.C.Cir.

1985), the court concluded that holdover members of the Board of the Legal Services Corporation could be replaced by recess appointees. In that case, however, the court simply adopted the reasoning of *Staebler*.

**10.** *See, e.g.*, 41 Op.Atty.Gen. 463, 467 (1960); 33 Op.Atty.Gen. 20, 21–23 (1921).

In light of all the circumstances and the deference owed by one branch of the government to another, an injunction is inappropriate and unnecessary.

In view of the fact that President Bush is no longer in office and the issue which prompted his threat to remove the Governors, including Nevin, has been resolved by the Court of Appeals, Count I of the Amended Complaint is moot.

Accordingly, an accompanying Order grants plaintiffs' motion for summary judgment on Count II, denies defendants' motions for summary judgment on Count II, and dismisses Count I as moot.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 23rd day of July, 1993, hereby

ORDERED: that plaintiffs' motion for summary judgment on Count II should be, and is hereby, GRANTED; and it is further

ORDERED: that defendants' motions for summary judgment on Count II should be, and are hereby, DENIED; and it is further

DECLARED: that the purported recess appointment and commission of Thomas Ludlow Ashley as a Governor of the United States Postal Service are, and were, null and void *ab initio*; and it is further

ORDERED: that plaintiffs' application for injunctive relief is DENIED without prejudice; and it is further

ORDERED: that Count I should be, and is hereby, DISMISSED as moot.