**David L. WILKINSON, Appellee,**

v.

**LEGAL SERVICES CORPORATION, Appellant.**

Nos. 95–5144, 95–5174.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 13, 1996.

Decided April 9, 1996.

Douglas N. Letter, Litigation Counsel, United States Department of Justice, argued the cause for appellant United States of America, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Jacob M. Lewis, Attorney, were on the briefs.

Niccolò N. Donzella, Baltimore, MD, argued the cause for appellant Legal Services Corporation, with whom Charles S. Fax was on the briefs.

Reuben B. Robertson, III, Washington, DC, argued the cause for appellee, with whom Neal Goldfarb, Washington, DC, and K.G. Jan Pillai, Philadelphia, PA, were on the brief.

Before: SILBERMAN, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The Legal Services Corporation (LSC) appeals the district court's determination that David Wilkinson's discharge as Inspector General was illegal because the Corporation's Board was unconstitutionally composed. We reverse and remand.

## I.

Wilkinson was employed under a written contract as the Inspector General of the LSC from September, 1989 to August, 1991, when the LSC Board of Directors exercised its contractual right not to renew his employment for the following year. The LSC Board that hired him was composed of directors appointed by President Reagan and confirmed by the Senate. Although by 1989 their terms of office had expired, they continued to serve under a "holdover" provision in the Legal Services Corporation Act, 42 U.S.C. § 2996c(b) (1988), that allowed them to remain until successors were appointed and "qualified." At the end of 1989 and the beginning of 1990, President Bush replaced the Reagan "holdover" directors with recess appointments, i.e. appointments made while the Senate was in recess and not confirmed by the Senate. In 1991 President Bush again made recess appointments, most of whom were the LSC members he had earlier appointed.[1] Wilkinson served under Boards composed of recess appointees 19 of his 24 months as Inspector General.

Wilkinson sued LSC claiming that the Board lacked authority to "discharge" him because its members were appointed in violation of the Appointments Clause, U.S. CONST. art. II, § 2, cl.2, which requires officers of the United States to be confirmed by the Senate. He also alleged that the action of the Board in terminating his employment was in violation of LSC's by-laws and governing Act. Wilkinson sought transcripts pursuant to the Government in the Sunshine Act, 5 U.S.C. § 552b (1994), of the closed session at which the Board discussed his termination. The district court, on cross motions for summary judgment, held that the composition of the Board was unconstitutional and that Wilkinson was entitled to the transcripts. The claim that the Board's actions violated the LSC by-laws and Act was said to be moot given these rulings. Wilkinson was awarded $224,600 as compensation for lost salary and employment benefits incurred as the result of the illegal termination.

## II.

Paradoxically, it is not the appellant that challenges the district court's constitutional

---

**1.** Incredibly, 75% of all presidential recess appointments between 1989 and 1992 were made to the LSC Board of Directors.

ruling. Instead, it is the United States, as intervenor, who contends that the appointments were constitutional under the Recess Appointments Clause, which provides that the President has the "Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session." U.S. CONST. art. II, § 2, cl.3. A "vacancy" occurred, according to the United States, once a Board member's term of office expired even if that member continued to serve under the holdover provision. The holdover provision states that a member may continue to serve until a successor is "appointed and qualified." A recess appointee is "qualified" and, therefore, may replace a holdover member.

Wilkinson objects to the United States' reading of the Clause, noting that the LSC Act provides that "[t]he members of the Board shall not, by reason of such membership, be deemed officers or employees of the United States," 42 U.S.C. § 2996c(c). This indicates that Congress did not intend for there to be a "vacancy" for purposes of the Recess Appointments Clause—which, after all, applies only to officers of the United States—when a member is serving under the holdover provision. Wilkinson also points to the legislative history of the LSC Act, arguing that Congress wished in that legislation to limit the President's Recess Appointments Clause powers. Naturally, the United States proposes an alternative reading of the legislative history and of § 2996c(c), limiting that provision to questions concerning whether LSC Board members are "officers" for statutory purposes.

The dispute over whether a "vacancy" exists when a member is serving under the holdover provision is of far-reaching importance since there are approximately 60 federal entities with similar statutory schemes. There is almost no discussion of the President's Recess Appointments Clause powers at the time of the Constitutional Convention and scant case law since. Both sides rely primarily on three district court decisions which are split on the constitutionality of replacing holdover directors with recess appointees. *Compare Staebler v. Carter*, 464 F.Supp. 585 (D.D.C.1979) (upholding the validity of recess appointments to the Board of Directors of the Federal Election Commission); *McCalpin v. Dana*, No. 82–542 (D.D.C. Oct. 5, 1982) (upholding the validity of recess appointments to LSC's Board), *vacated as moot, sub. nom McCalpin v. Durant*, 766 F.2d 535 (D.C.Cir.1985), *with Mackie v. Clinton*, 827 F.Supp. 56 (D.D.C. 1993) (invalidating recess appointment to the Board of Governors of the United States Postal Service), *vacated as moot*, 1994 WL 163761 (D.C.Cir.1994). The LSC does not take a position on this dispute asking only that we decide this issue so the matter is settled once and for all.

LSC does argue that, regardless of the validity of the appointment of particular directors under the Recess Appointments Clause, the Board's actions are valid under the *de facto* officer doctrine. The Supreme Court has described the general rule, which is embodied by this doctrine, as providing that:

> where there is an office to be filled and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer *de facto* and binding upon the public.

*McDowell v. United States*, 159 U.S. 596, 602, 16 S.Ct. 111, 113, 40 L.Ed. 271 (1895). The district court, relying on our recent opinion in *Federal Election Commission v. NRA Political Victory Fund*, 6 F.3d 821 (D.C.Cir. 1993), *cert. dismissed*, —— U.S. ——, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994), rejected application of the *de facto* officer doctrine. In that case, we held that since the Federal Election Commission was unconstitutionally constituted, its enforcement action against the NRA had to be dismissed. Appellant contends that *NRA* (and *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), on which *NRA* relies) is distinguishable because the NRA, an independent actor, had challenged the constitutionality of an agency seeking to take action against it. *Cf. Morrison v. Olson*, 487 U.S. 654, 669–70, 108 S.Ct. 2597, 2607–08, 101 L.Ed.2d 569 (1988). Here, it is argued that Wilkinson, an employee of the Corporation—indeed its Inspector

General—had an obligation to notify the Board of the alleged constitutional defect long prior to his suit. We are unpersuaded by this argument. The notice requirement of the *de facto* officer doctrine is designed to permit the government agency to act so as to avoid a constitutional challenge. *See Andrade v. Lauer*, 729 F.2d 1475, 1499 (D.C.Cir. 1984). We cannot imagine how the Board could have altered its behavior to avoid Wilkinson's challenge—other than to extend his contract. If the Board members were unconstitutionally appointed, there was obviously no means available to them to remedy that legal situation.

We recognized, however, that appellant's *de facto* officer argument is phrased in equitable estoppel terms—that Wilkinson should not be heard to complain about an "alleged title defect [of the Board members legal title] which he utterly failed to bring to the attention of the Board or LSC during his tenure as Inspector General...." That led us to ask the parties to address the relevance of our recent decision in *Robertson v. FEC*, 45 F.3d 486 (D.C.Cir.1995), dealing with constitutional estoppel. Appellant, not surprisingly, embraced that opinion and assimilated it into its argument; Wilkinson—again not surprisingly—claimed that appellant's argument, both in the district court and before us, did not extend to the constitutional estoppel principle set forth in *Robertson* and that therefore that "argument" was waived.

■ As we have already noted, we think an estoppel argument was implicit in the manner in which appellant presented its *de facto* officer doctrine argument in its brief. Moreover, constitutional estoppel is just one application of the estoppel concept, a branch of equity. And, appellant did rely on general equitable principles to urge reversal. It did the same thing below—at least in its motion for reconsideration. The district court rejected those arguments on the merits, not because the court thought they had been waived. Therefore, the claim that Wilkinson is estopped from challenging the constitutionality of the Board members' appointments is properly before us.

## III.

■ We think that the *Robertson* estoppel doctrine does bar Wilkinson from challenging the constitutionality of the Board's composition. *Robertson* involved a presidential candidate, Pat Robertson, who accepted federal matching funds from the FEC, but when the FEC required him to repay some of these funds due to various improprieties, he refused to do so. Robertson claimed that the FEC was unconstitutionally constituted under *NRA*, thereby rendering the FEC powerless to require repayment. We rejected this argument explaining that

> [i]t is hardly open to [Robertson] now, after having taken the money, to claim that the very statutory instrumentality by which the funds are dispensed may not seek reimbursement because its composition is unconstitutional.... [Robertson] has mounted a categorical, structural challenge unrelated to the funds he has received and now attempts to avoid repaying.

*Robertson*, 45 F.3d at 490. Similarly, Wilkinson has been employed and *compensated* by a recess appointments Board for nearly two years. What is more, this Board, as documented by the transcripts of its meetings, allocated funds for the 1990 and 1991 cost-of-living adjustments beyond those to which Wilkinson was entitled to by contract.[2] Wilkinson attempts to distinguish *Robertson* because the Board that hired him was undoubtedly legally appointed; he only challenges the actions of the allegedly illegally constituted Board that terminated his employment. But Wilkinson would have us ignore the fact that he was employed and compensated for much of the time by the same allegedly illegal Board. If the Board were unconstitutionally constituted, it might be that all payments made to Wilkinson are voidable. It is not at all clear to us that Wilkinson even has standing to raise his constitutional claim. For if the Board were unconstitutionally appointed, a decision to extend his contract for another year (and therefore not to give him notice of termination) would seem as much beyond the Board's authority as its decision to terminate the contract. Wilkinson's

---

**2.** It also appears that Wilkinson received additional insurance benefits.

standing to raise this issue may depend on a close reading of his contract, but since by relying on constitutional estoppel we do not reach the merits, we think it unnecessary to explore that question further.

The district court did not consider Wilkinson's alternative claim that the termination of his employment violated the LSC by-laws and Act, so we remand this question.[3] This claim is not a categorical, structural challenge to all the recess appointments Board's actions but rather directly focuses on the legality of the specific action which resulted in Wilkinson's termination.

  *   *   *   *   *   *

Accordingly, the constitutional issue that all parties wish us to decide will have to remain for another case that necessarily presents that issue. The district court's decision in favor of appellee Wilkinson is

*Reversed and remanded.*

---

3. The district court's conclusion that the Board violated the Sunshine Act by holding closed meetings is not before us since LSC only challenges this conclusion if we decide that the recess appointments Board was unconstitutionally constituted.