# Appointments to the Board of the
# Legal Services Corporation

The President has authority to appoint a member of the Board of the Legal Services Corporation who has been confirmed after his or her statutory term of office has expired, where the holdover provision of the statute allows a member to serve until a successor is appointed.

September 20, 2005

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

On July 28, 2005, the Senate confirmed the President's nominations of Thomas A. Fuentes and Bernice Phillips as members of the Legal Services Corporation's Board of Directors, for terms expiring July 13, 2005. 151 Cong. Rec. 19,014 (July 28, 2005). You have asked whether the President may now make these appointments and, if so, how long the appointees may serve. We believe that the President may make the appointments and that each appointee would serve at the pleasure of the President in a holdover capacity until his or her successor is appointed and qualifies.

The Legal Services Corporation ("LSC"), which "provid[es] financial support for legal assistance in noncriminal proceedings or matters to persons financially unable to afford legal assistance," 42 U.S.C. § 2996b(a) (2000), has a board of directors "consisting of eleven voting members appointed by the President, by and with the advice and consent of the Senate . . . ." *Id.* § 2996c(a). The directors serve staggered terms of three years, with the terms of five directors expiring one year before the terms of the other six. *Id.* § 2996c(b). To preserve this staggering, "[t]he term of each member . . . shall be computed from the date of termination of the preceding term." *Id.* § 2996c(b). At the same time, to ensure the continuity of the LSC, the statute allows members in some cases to "hold over" after their terms expire and new terms begin: "Each member of the Board shall continue to serve [beyond the expiration of his or her term] until the successor to such member has been appointed and qualified." *Id.*

On January 24, 2005, the President nominated Mr. Fuentes and Ms. Phillips for vacancies on the Board and specified in the nominations that the nominees would serve terms expiring July 13, 2005. 151 Cong. Rec. 592 (Jan. 24, 2005). The nominations were for these foreshortened periods because the term for each nomination, in accordance with the statute, was "computed from the date of termination of the preceding term" and because the term of each nominee's predecessor had expired three years before that date. *Id.*

If the nominees had been confirmed and appointed before July 13, no matter how close to that date, there would be no doubt that they could "continue to serve" beyond that date. Thus, there would be no gap in the filling of the positions. The

question is whether the statute nevertheless bars a holdover from filling a gap simply because he was confirmed after July 13. We do not think that it does.

Although we have found no precedent for appointments to terms that have expired, we believe that the appointments of Mr. Fuentes and Ms. Phillips would be consistent with the statute. The statute provides for "members" of the Board to be "appointed by the President, by and with the advice and consent of the Senate." 42 U.S.C. § 2996c(a). Here, that would be done. The Senate has given its advice and consent to an appointment by the President. There is no doubt about which of the positions on the Board each of the prospective appointees would take. Even though the particular terms to which they were nominated have expired, the positions on the Board that they would occupy of course continue to exist. They therefore would be made "members" of the Board. Furthermore, because of the statutory provision under which "[e]ach member of the Board shall continue to serve until the successor to such member has been appointed and qualified," *id.* § 2996c(b), they may carry out their duties as members notwithstanding the expiration of the terms for which their appointments would be made. A member appointed to an expired term would serve pursuant to that provision, pending replacement by a successor.

It would, moreover, make little practical sense to conclude that the President lacks authority to make the appointments. The President in his nomination and the Senate in its confirmation have passed upon each prospective appointee's fitness for office, and the President is now about to make the final decision to effect the appointment. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 157 (1803). A conclusion that the President may not make the appointment would mean that the Senate's solemn act of advice and consent was a nullity, that the considerable effort of bringing the prospective appointment to this point was wasted, and that the Board would be denied the services that the President and Senate believe it should have.

Arguably, the "holdover" provision does not fit the present facts; it allows members to "continue to serve," and it might be argued that appointees who become members after the expiration of their terms do not "continue" to serve as holdovers because they did not serve earlier. However, an appointment under section 2996c(a) makes the appointee a "member" of the Board, and section 2996c(b) simply provides that, from that moment, the member may serve in a constant manner, without interruption, notwithstanding the expiration of his or her term, whenever that may occur. This reading is consistent with the sense of the verb "continue" as meaning "to be steadfast or constant in a course or activity: keep up or maintain esp. without interruption a particular condition, course, or series of actions." *Webster's Third New International Dictionary* 493 (1986). Furthermore, to the extent that the word "continue" is ambiguous, we construe it so as to promote a complete, fully functioning Board. The clear purpose of the holdover provision here, "like the holdover clauses that appear in the statutes of

many independent agencies, is to ensure continuity and avoid the leadership vacancies that otherwise would exist until successor officials could be appointed," and "to prevent gaps in agency leadership" and "ensure agency continuity," *Swan v. Clinton*, 100 F.3d 973, 985 (D.C. Cir. 1996) (citations omitted) (interpreting a provision that precluded reappointment and thus could raise an issue about continuity, but relying on authorities about various holdover clauses to reach the general conclusion about their purpose); and this gap-filling purpose supports the conclusion that the appointees here can serve as holdovers.[1]

The appointees' status, to be sure, would be unusual. A position held by a holdover official at the LSC is vacant for the purposes of the Recess Appointments Clause. *Effect of Statutory Holdover Provisions*, 2 Op. O.L.C. 398 (1978); Memorandum for C. Boyden Gray, Counsel to the President, from William P. Barr, Assistant Attorney General, Office of Legal Counsel, *Re: Recess Appointments to the Board of Directors of the Legal Services Corporation* (Nov. 28, 1989); *McCalpin v. Dana*, No. 82-542 (D.D.C. Oct. 5, 1982) (the President could displace holdover directors by making recess appointment), *appeal dismissed as moot*, *McCalpin v. Durant*, 766 F.2d 535 (D.C. Cir. 1985); *but see Wilkinson v. Legal Servs. Corp.*, 865 F. Supp. 891 (D.D.C. 1994) (when an LSC director is serving under a holdover provision, the director's office is not vacant and thus cannot be filled through a recess appointment), *rev'd on other grounds*, *Wilkinson v. Legal Servs. Corp.*, 80 F.3d 535 (D.C. Cir. 1996). Thus, the appointments here would not "fill" the positions for those purposes. But this consequence does not present a good reason for concluding that the appointment cannot be made at all. These appointees would be removable at will by the President and would not have the tenure protection that other appointees may enjoy, *see, e.g.*, *Swan*, 100 F.3d at 984 (even assuming that appointees would have tenure protection during their terms, they are removable without cause while they are holding over), but they would be able fully to discharge the duties of their offices until they are replaced by successors.[2]

---

[1] A similar gap-filling purpose has informed the interpretation of the Recess Appointments Clause, U.S. Const. art. II, § 2, cl. 3, where the phrase "Vacancies that may happen during the Recess of the Senate" has been construed to reach vacancies that first occur before a recess but still exist when the recess begins. In accordance with this construction, the court in *Evans v. Stephens*, 387 F.3d 1220, 1226–27 (11th Cir. 2004) (en banc), explained that "interpreting the phrase to prohibit the President from filling a vacancy that comes into being on the last day of a Session but to empower the President to fill a vacancy that arises immediately thereafter (on the first day of a recess) contradicts what we understand to be the purpose of the Recess Appointments Clause: to keep important offices filled and the government functioning."

[2] Although the President's power to displace a holdover director through a recess appointment is sanctioned by the longstanding view of the Executive Branch and by some practice, the exercise of a power simply to remove a holdover director at the LSC would be, as far as we are aware, unprecedented. We nevertheless believe that the President has the power to remove a holdover director at will.

By statute, a director "may be removed by a vote of seven members for malfeasance in office or for persistent neglect of or inability to discharge duties, or for offenses involving moral turpitude, and for

Finally, we do not believe that Mr. Fuentes and Ms. Phillips could be considered to be appointed to three-year terms beginning July 13, 2005. Presidents sometimes make two nominations of a person at the same time—one nomination for the unexpired portion of a term and another for the succeeding full term. *See* Memorandum for John D. Calhoun, Assistant Deputy Attorney General, from Robert Kramer, Assistant Attorney General, Office of Legal Counsel, *Re: Prospective Appointments by the President* (Apr. 7, 1960). Here, however, the President nominated Mr. Fuentes and Ms. Phillips only for the unexpired portions of the terms ending July 13, 2005. The practice of making simultaneous nominations for successive terms, along with the absence of such nominations here, negates any argument that the Senate's confirmations for terms ending July 13, 2005, should be regarded as confirmations for terms ending in 2008, and that the later appointments would also be for such terms. *Cf. Case of Chief Constructor Easby*, 16 Op. Att'y Gen. 656, 657 (1880) ("The law of the term of the office, of

---

no other cause." 42 U.S.C. § 2996c(e). The statute is silent on removal by the President. We would not construe this legislative silence as precluding the President from removing a holdover director, because such a construction would raise serious constitutional concerns. *See The President's Authority to Remove the Chairman of the Consumer Product Safety Commission*, 25 Op. O.L.C. 171, 172 (2001) ("CPSC Memorandum"). Therefore, in our view, "unless Congress signals a clear intention otherwise, a statute should be read to preserve the President's removal power, so as to avoid any constitutional problems." *Id.* at 173 (citations omitted). There may still be a question whether the President's removal authority should be limited by an implied "for cause" restriction. Whatever arguments for such a restriction might be offered as to removal of a director during his term, we believe that removal of a holdover director would not require cause. A "for cause" restriction on removal during a holdover period cannot be justified as necessary for the LSC's independence. As the District of Columbia Circuit held in rejecting the argument that holdover officials at the National Credit Union Administration were removable only for cause,

> [h]oldover members can be replaced, whether they have removal protection or not, by the President nominating and the Senate confirming their successors. As a result, a removal restriction will not protect holdover members from the aftermath of a Presidentially unpopular decision, and holdover members know that even if they cannot be removed directly, an unpopular decision may lead the President to nominate a successor immediately or encourage the Senate to speed up confirmation hearings. . . . [A]ll that removal protection achieves is to make holdover members more dependent on Senate inaction than on the President.

*Swan*, 100 F.3d at 984. A concurring opinion was, if anything, more emphatic:

> [A]fter the term expires, the reason for the assumption [that tenure protection could ever be inferred] expires as well. Unless, then, Congress indicates in the legislation itself that it intends some measure of job protection during the holdover period, which in this sort of situation—where Congress did not explicitly provide a good cause limitation on removal during the actual term—is virtually inconceivable, there is no reason at all to infer a congressional purpose to limit the President's removal power during the holdover period.

*Id.* at 990 (Silberman, J., concurring). Thus, in addition to the reasons that counsel against inferring tenure protection even during an official's term, *see* CPSC Memorandum, 25 Op. O.L.C. at 172–74, there are compelling reasons that the statutory silence about the President's removal authority should not be interpreted to impose a removal restriction during a holdover period.

course, controls special language in the nomination and confirmation."); *Quackenbush v. United States*, 177 U.S. 20, 27 (1900) ("the terms of the commission cannot change the effect of the appointment as defined by the statute").

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*
