ORDER
EDMONDSON, Chief Judge:
Between the twelfth and twenty-third of February 2004, the United States Senate took a break in their Session. 150 Cong. Rec. S1414-04 (daily ed. Feb. 12, 2004) (statement of Sen. Frist) (“I wish everyone a safe President’s Day recess”); 150 Cong. Rec. S1415-02 (daily ed. Feb. 12, 2004) (statement of Sen. Frist) (“the Senate, at 8:49 p.m., adjourned until Monday, February 23, 2004”). During that break, on 20 February 2004, the President appointed William H. Pryor Jr. to the Eleventh Circuit Court of Appeals. The President relied on the Recess Appointments. Clause. *1222 U.S. Const, art. II, § 2, cl. 3. In this case, plaintiff-appellees by a timely written motion challenge the authority of Judge Pryor to act as a United States Circuit Judge.[1] We conclude that the President’s appointment was not beyond his constitutional power.
The Judicial Branch is the controlling interpreter of how the Constitution applies. But the President, in his capacity as chief executive of this country, is also sworn to uphold the Constitution. And when the President is acting under the color of express authority of the United States Constitution, we start with a presumption that his acts are constitutional.[2] See United States v. Allocco, 305 F.2d 704, 713 (2d Cir.1962) (Recess Appointments Clause case); see also U.S. v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974) (observing “In the performance of assigned constitutional duties each branch of the Government must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others.”). To be sure, the presumption is a rebuttable one; but the burden is on the challengers to overcome it with their arguments and to persuade us to the contrary. Just to show that plausible interpretations of the pertinent constitutional clause exist other than that advanced by the President is not enough. We are not persuaded that the President acted beyond his authority in this case: both the words of the Constitution and the history of the nation support the President’s authority.

Recess Appointments to Article III Courts are Allowed

We focus mainly on what the Constitution says and does not say. The text of the United States Constitution authorizes recess appointments of judges to Article III courts.[3] Article II, Section 2, *1223 Clause 3 of the United States Constitution specifically says “The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.” The term “Vacancies” refers to the offices listed in the preceding clause: “Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law.” In other words, Clause 2 explains the appointments the President may make with Senate advice and consent; Clause 3 explains the President may make temporary appointments to “all” of these offices without Senate advice and consent. Recess appointments to the judiciary are allowed: one of the offices specifically mentioned is “Judges of the supreme Court.” Appointments of United States Circuit Judges are covered. See The Federalist No. 78, at 522 (Alexander Hamilton) (Jacob E. Cooke ed., 1961) (noting that judges are to be appointed in the same manner as executive officers: “the officers of the union in general ... ”); The Federalist No. 67, at 455 (Alexander Hamilton) (Jacob E. Cooke ed., 1961) (noting that the term “Vacancies” must “be construed to relate to the ‘officers’ described in the preceding [clause]”).
History unites with our reading to support our conclusion. As we understand it, beginning with President Washington, over 300 recess appointments to the federal judiciary (including fifteen to the Supreme Court) have been made. Historical evidence of this practice alone might not make the recess appointment constitutional, but this historical practice — looked at in the light of the text of the Constitution— supports our conclusion in favor of the constitutionality of recess appointments to the federal judiciary. See generally Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 3335, 77 L.Ed.2d 1019 (1983) (observing that historical practice of Framers “sheds light” on the intended meaning of constitutional provisions).
Although we see some tension between Article III and the recess appointment of judges to Article III courts, we reject the argument that the language in Article III, saying that judges serve during “good Be-haviour” and without a diminished salary, somehow trumps the Recess Appointments Clause. The conflict between these equally important constitutional provisions is not irreconcilable: the temporary judges appointed under the Recess Appointments Clause are an exception to the general rule of Article III. The text of the Recess Appointments Clause refers specifically to “all” vacancies: we accept that the Clause does not leave out Article III judicial vacancies.[4]
The Constitution, on its face, neither distinguishes nor limits the powers that a recess appointee may exercise while in office. That is, during the limited term in which a recess appointee serves, the appointee is afforded the full extent of authority commensurate with that office. For those who fear judicial recess appoint *1224 ments because the appointments bypass the Senate completely, we stress the obvious: the temporary judges lose their offices at the end of the Senate’s next Session.
We accept that it was the intent of the Framers to keep important offices filled and government functioning.[5] And while recess appointees may not have every bit of the protection for their independence that regularly confirmed Article III judges have, we accept the Framers thought that what might be intolerable, if prolonged, was acceptable for a relatively short while.[6] And, of course, plenty of the judges in this country (for example, state judges) then and now do not have all the protection of Article III judges; yet these courts are not seen to be inherently unfair, and the litigants who appear before them have not been held to have been denied due process on that account. So, we can readily accept that the Framers would tolerate, on a temporary basis, some federal judges who lacked Article III protection.
The Second and Ninth Circuits, in reasoned opinions, have also decided that the Recess Appointments Clause reaches appointments to Article III courts. United States v. Woodley, 751 F.2d 1008 (9th Cir. 1985) (en banc); United States v. Allocco, 305 F.2d 704 (2d Cir.1962).

“The Recess of the Senate” Includes an Intrasession Recess

Focusing first on the language of the Constitution, and then'on the nation’s history and on the purpose of the Recess Appointments Clause, we also conclude that President Bush appointed Judge Pryor during a legitimate Senate recess, that is, during a “Recess” within the meaning of the Recess Appointments Clause. In this case, the Senate’s break fits the definition of “recess” in use when the Constitution was ratified: the dictionary definitions that have been- called to our attention (or that we have found) did not, for example, speak of a minimum time. See, e.g., A Dictionary of the English Language (1755) (reprinted 1967) (defining “recess” as “retirement; retreat; withdrawing; secession” or “remission and suspension of any procedure”). And- the text of the Constitution does not differentiate expressly between inter- and intrasession recesses for the Recess Appointments Clause.
The challengers have used both history and 'textual analysis to support their contentions that the ten- or eleven-day break in the Senate’s Session that underlies Judge Pryor’s appointment was not a “Recess” within the meaning of the Recess Appointments Clause. We have considered all of the arguments. But the arguments are not so strong as to persuade us that the President’s interpretation is incorrect. For example, we reject the argument that the plain meaning of the phrase, “the Recess of the Senate,” limits the opportunity to make recess áppointments to one particular recess: the recess at the end of a Session. We do not agree that the Framers’ use of the term “the” unambiguously points to the single recess that comes at the end of a Session. Instead, we accept that “the Recess,” originally and through today, could just as properly refer *1225 generically to any one — intrasession or intersession — of the Senate’s acts of recessing, that is, taking a break. See The Random House Dictionary of the English Language 1965 (2d ed.1987) (1966) (defining “the” as “used to mark a noun as being used generically: the dog is a quadruped ”); 17 The Oxford English Dictionary, 879 (2d ed.1989) (1928) (defining “the” as “referring to a term used generically or universally” and providing examples of such usage from the 18th Century).[7]
For another example, we are not persuaded by the argument that the Framers’ use, in three other clauses, of the term “Adjournment,” and not “Recess,” necessarily limits the meaning of “Recess” to a particular kind of break: only a break at the end of a Session. Instead of describing a block of time, the term “Adjournment” in the Constitution can be read to signify a parliamentary action: Congress’s taking or having taken a break. See e.g., U.S. Const, art. I, § 7, cl. 2 (“If any Bill shall not be returned by the President within ten Days ... the Same shall be a Law ... unless the Congress by their Adjournment prevent its Return ...”).
We know that the Supreme Court has used the term “Adjournment” in a manner that suggests that the word signifies a break period rather than signifying a means by which a break is taken. See Wright v. United States, 302 U.S. 583, 58 S.Ct. 395, 398, 82 L.Ed. 439 (1938). The Supreme Court there was construing the term “Adjournment” for purposes of the Pocket Veto Clause: the question of the meaning of the word “Recess” in the Recess Appointments Clause was not before the Court. We note, however, that even if the Wright Court’s usage of “Adjournment” and “Recess” were directly applicable here, their usage would suggest that the term “Adjournment” is the formal break occurring at the end of a Session and that a “Recess” is something that can and does occur during a Session. See id. at 398 (noting that a three-day “recess is not an adjournment”). This usage by the Supreme Court tends to .support our accepting the President’s interpretation that a “Recess” includes a break during a Session.
The Constitution, on its face, does not establish a minimum time that an authorized break in the Senate must last to give legal force to the President’s appointment power under the Recess Appointments Clause. And we do not set the limit today. Although a President has not before appointed a judge to an Article III court during an intrasession recess as short as the one in this case, appointments to other offices — offices ordinarily requiring Senate confirmation — have been made during in-trasession recesses of about this length or shorter.[8] Furthermore, several times in the past, fairly short intrasession recesses have given rise to presidential appointments of judges to Article III courts.[9]
*1226 Twelve Presidents have made more than 285 intrasession recess appointments of persons to offices that ordinarily require consent of the Senate. So, given the words of'the. Constitution and the history, we are unpersuaded by the argument that the recéss appointment power may only be used in an intersession recess, but not an intrasession recess. Furthermore, what we understand to be the main purpose of the Recess Appointments Clause — to-’ enable the President to fill vacancies to assure the proper functioning of our government — supports reading both intrasession recesses and intersession recesses as within the correct scope of the Clause. That an intersession recess might be shorter than an intraséssion recess is entirely possible.[10] The purpose of the Clause is no less satisfied during an intrasession recess than during a, recess- of potentially even shorter duration that comes as an intersession break.

‘Vacancies” Need Not Arise During the Recess in Order to be Filled

About thé phrase in the Recess Appointments Clause that speaks of filling “Vacancies that may happen during the Recess,” we accent this- phrase, nr context, means that, if vacancies “happen” to exist during a recess, they may be filled on a temporary basis by the President. This view is consistent with the understanding of most judges that have considered the question, written executive interpretations from as early as 1823, and legislative acquiescence. See United States v. Woodley, 751 F.2d 1008, 1012 (9th Cir.1985) (en banc) (noting that contrary interpretation “conflicts with a common sense reading of the word happen, as well as the construction given to this word by the three branches of our government”); United States v. Allocco, 305 F.2d 704, 709-15 (2d Cir.1962); see also In re Farrow, 3 F. 112 (N.D.Ga.1880).
On its face, the phrase is open to more than one interpretation. For example, the word “happen” can be defined as “befall” which has been defined as “happen to be.” Compare 6 Oxford English Dictionary 1096 (2d ed.1989) (1928) with 2 Oxford English Dictionary at 62. Therefore, the phrase’s most accepted interpretation (upon which the President has relied and that we too accept) does not contradict the plain meaning rule.
In addition, as we understand the history, early Presidents — when delegates to the Constitutional Convention were still active in government — made recess appointments to fill vacancies that originated while the Senate was in Session. For example, President Washington, during a Senate break in 1789, appointed Cyrus Griffin to fill a judgeship created during a previous Session; and President Jefferson, during a Senate break in 1801, appointed three judges to fill vacancies created during a previous Session.
Congress at least implicitly agrees with this view of recess appointments. See 5 U.S.C. § 5503 (1996) (discussing salary requirements for officers appointed to fill a vacancy that existed while Senate was in session).[11] Furthermore, interpreting the *1227 phrase to prohibit the President from filling a vacancy that comes into being on the last day of a Session but to empower the President to fill a vacancy that arises immediately thereafter (on the first day of a recess) contradicts what we understand to be the purpose of the Recess Appointments Clause: to keep important offices filled and the government functioning.[12]

One Non-Justiciable Issue Is Presented

As judges, we have the authority and duty to construe and to apply the Constitution as it is' written. We have done so today to conclude that the Constitution gives to the President the discretionary authority to appoint a judge to fill a vacancy on an Article III court during a ten- or eleven-day, intrasession recess of the Senate.
Plaintiff-appellees seem to go on to contend another thing. They contend that the President misused this discretionary appointment authority in this particular instance because Judge Pryor’s nomination — before the recess appointment — had been especially controversial and his confirmation had been blocked in the Senate. The argument, as we understand it, is that this specific recess appointment circumvented and showed an improper lack of deference to the Senate’s advice-and-consent role and, thus, should not be allowed.
This kind of argument presents a political question that moves beyond interpretation of the text of the Constitution and on to matters of discretionary power, comity and good policy. These matters are criteria of political wisdom and are highly subjective. They might be the proper cause for political challenges to the President, but not for judicial decision making: we lack the legal standards — once we move away from interpreting the text of the Constitution — to determine how much Presidential deference is due to the Senate when the President is exercising the discretionary authority that the Constitution gives fully to him.

Conclusion

We are not persuaded the President exceeded his constitutional authority in a way that causes Judge Pryor’s judicial appointment to be invalid. We conclude that Judge Pryor may sit with this Court lawfully and act with all the powers of a United States Circuit Judge during his term of office.[13]
*1228 MOTION DENIED.[14]

.We do not view the question of the constitutionality of Judge Pryor's appointment as affecting jurisdiction and, thus, requiring this Court to act sua sponte. We have rejected the argument that the Supreme Court's recent decision in Nguyen v. United States, 539 U.S. 69, 123 S.Ct. 2130, 156 L.Ed.2d 64 (2003), directs us to view this challenge to Judge Pryor's appointment as jurisdictional. There, the Supreme Court merely exercised its power to correct a statutory violation by the Ninth Circuit when the Circuit Court allowed a non-Article III judge to sit on a three-judge panel. The Court granted the litigant permission to appeal the issue (which had not been raised in earlier proceedings) based on its Rule 10(a) "supervisory power,” not because the Court considered the issue as jurisdictional.
In addition, the Supreme Court’s decision in Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), characterized Recess Appointments Clause objections as "nonjurisdic-tional structural constitutional objections.” Id. at 2639 (viewing whether to address such a structural constitutional objection, despite the litigant's failure to raise the issue in lower court proceedings, as being within the Court's discretion).
This motion is the first instance — that was both timely and ripe — in which a party objected, on account of Judge Pryor’s recess appointment, to his taking part in a decision as a judge of this Court. *

. We do not have before us and do not address a circumstance in which the Senate, itself, is a litigant challenging a President’s act. One distinguished member of the Senate, Senator Kennedy, is acting as amicus curiae, supporting plaintiff-appellees’ challenge of Judge Pryor.

. The sequence of the relevant clauses is important. The pertinent text of Article II, Section 2, Clauses 2 and 3 reads this way:
"[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law....”
U.S. Const, art. II, § 2, cl. 2.
*1223 "The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.”
U.S. Const, art. II, § 2, cl. 3. (emphasis added).

. There are (and always have been) few Article III judgeships for the whole country. Therefore, because an Article III judge's power cannot be delegated to other people in the way most powers of executive branch officers can be, judicial vacancies are especially hurtful to the judicial branch and, in turn, to its ability to serve the nation and its people. That the Framers would have been as concerned with keeping judicial offices filled as keeping executive offices filled makes sense.

. For example, Alexander Hamilton described the Recess Appointments Clause as "establishing an auxiliary method of appointment in cases, to which the general method was inadequate.” The Federalist No. 67, at 455 (Alexander Hamilton) (Jacob E. Cooke ed., 1961). Sometimes, filling a vacancy should not be put off. As Hamilton wrote, "it might be necessary for the public service [for the President] to fill [vacancies] without delay.” Id.

. To our knowledge, Congress has never attempted to diminish the pay of a recess-appointment judge while he was in office. Whether such an attempt would be constitutional is itself an open question.

. By the way, the Constitution does not limit a term of Congress to two Sessions. One Congress had four Sessions. And several, including the first, had three Sessions. Therefore, even if the phrase "the Recess of the Senate” meant only recesses between the Sessions of the Congress (which we do not accept), there could easily be more than one such recess per Congress.

. For example, President Clinton appointed a judge to the Court of Federal Claims during an intrasession eleven-day recess. President Clinton made another recess appointment during an intrasession nine-day recess. President Reagan and President Coolidge made appointments during intrasession breaks of no more than thirteen-days. H. Hogue, Congressional Research Service, Intrasession Recess Appointments CRS-7-CRS-29 (April 23, 2004).

.For example, President Nixon appointed three Judges to the D.C. Circuit Court of Appeals during an intrasession 32-day recess. And President Truman appointed several District Court Judges during an intrasession 35-day recess. H. Hogue, Congressional Re *1226 search Service, Intrasession Recess Appointments CRS-9-CRS-21 (April 23, 2004).-

. In fact, over the course of this nation’s history, the Senate has effectively taken zero-day intersession recesses (at least in 1867 and 1903, the Senate did not break for, an intersession recess); and the Senate has taken intrasession recesses lasting months, including one, of nearly 5 months (7 August 1948 through 31 December 1948).

. That Congress is willing, under certain circumstances, to pay recess appointees filling vacancies that had existed while the Senate was in Session suggests to us that it is the view of the majority of Congress that the President’s making of such appointments is likely not unconstitutional. To interpret the statute's significance any other way would seem to attribute to Congress an intent to countenance what they saw as an unlawful practice.

. We do not agree that the different language of Article I, Section 3, Clause 2 (addressing the filling of Senate vacancies during recesses of state legislatures) shows that what has long been the common interpretation of the Recess Appointments Clause is wrong. Nor do we agree that Hamilton’s capitalization or italicization of the words "during the recess of the Senate” in Federalist 67 and 76 indicates that the vacancy to be filled (as opposed to the appointment itself) must occur in the recess.

. Plaintiff-appellees also have moved to disqualify Judge Piyor based on his service as the Attorney General of the State of Alabama at the time of the Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) decision and on his comments — made before his appointment to this Court and before his taking the oath of office as a judge — about the outcome of that case. This aspect of the motion to disqualify approaches being frivolous. Hope involved different parties and a different set of material facts than are present in this case. In addition, all or almost all judges were advocates on one side or another of many controversies before becoming judges. When they become judges, they take on an altogether different job and swear to judge "impartially.” Mere representation and opinions about a previous unrelated matter — especially made before one took the oath of office — do not disqualify a judge. See, e.g., United States v. Outlet, 659 F.2d 1306, 1312 (5th Cir. Unit B 1981), overruled on other grounds by United States v. Steele, 147 F.3d 1316 (11th Cir.1998) (en banc). Judge Pryor’s statements made as Alabama’s Attorney General do not disqualify him as a judge in this Georgia case.

. We considered certifying to the Supreme Court the question of the validity of Judge Pryor’s recess appointment. We, however, decided against that course largely because we believed our ruling on the matter would almost certainly be a speedier determination. We think that a speedier determination is best for the Court, for Judge Pryor, and for the parties that come before this Court. Had we certified the question, we had no way of knowing when the Supreme Court might get to rule on it or even if they would take the question at all. In the meantime, everyone concerned would be in a kind of legal limbo. Furthermore, it is not the nature of this Court of Appeals to blink because a case is hard or sensitive. As the Supreme Court has said, it is the "task” of a Court of Appeals "to decide all properly presented cases coming before it ...” Wisniewski v. United States, 353 U.S. 901, 77 S.Ct. 633, 634, 1 L.Ed.2d 658 (1957) (dismissing certification). Now that we have ruled, the Supreme Court, of course, can decide for itself (and on a schedule of its own choosing) whether the issue is important enough or close enough to justify their limited time and energy in its consideration.
The public has no good reason to doubt the impartiality of our decision: our own offices are not at stake in this case; we have no financial interest in the outcome; and we did not select or appoint Judge Pryor to sit on this Court. We recognize that our associate Judge Pryor has an interest in the motion, but even the naming of a judicial colleague as a defendant in litigation (and Judge Pryor is not a defendant here) does not require automatic disqualification of every judge on the same court. Guide to Judiciary Policies and Procedures, Vol. II, Ch. IV, Published Advisory
Opinion No. 103(II)(B) (2002). In addition, on the question of the constitutionality of Judge Pryor's appointment, several factors point toward our going forward to decide this case: (1) the issue concerns solely the President’s recess appointment power and bears no relation to Judge Pryor's personal conduct or credibility; (2) even as to the narrow issue of the President's appointment power, the motion raises purely legal, constitutional issues based on undisputed facts and does not involve discretion or any fact-finding by this Court; (3) the motion raises mainly an issue affecting all recess appointments and not only Judge Pryor’s appointment; (4) Judge Pryor is not a party to this case and has himself voluntarily recused from participating in this motion to disqualify; and. (5) as noted above, our prompt resolution of this issue, as opposed to certification, best serves sound judicial administration.
By the way, no one has sought to disqualify any or all of the Article III judges of this Court from deciding this motion.