# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30731

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2015

Lyle W. Cayce
Clerk

In re: ANTHONY ALLEN WILLIAMS,

Movant

Motion for an order authorizing
the United States District Court for the
Western District of Louisiana, Shreveport to consider
a successive 28 U.S.C. § 2255 motion

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Two distinct but kindred doctrines, each a marker of judicial role, show their force in this case – vagueness, and judicial control of the backward reach of judicial opinions. While the former is drawn from due process, both are shadowed by their never-ending struggle with the nuances of Article III and separation of powers. Deploying the vagueness doctrine, the Court excised an element of a sentencing statute, leaving uncertain the class of persons injured by its presence and entitled to relief – here petitioners for habeas relief whose conviction and sentence are sound by the law in place when they exhausted their appeals. The Supreme Court's struggle with habeas relief for path-breaking decisions impacting criminal prosecutions includes a full retreat from

claimed authority to make its decisions prospective only, turning to limiting habeas petitioners to the law in place when they exhausted direct appeals, a turn reinforced by Congress.[1]

## I.

Movant Anthony Williams drew a fifteen year sentence under the Armed Career Criminal Act (ACCA),18 U.S.C. §924(e), as a felon in possession of a firearm with three predicate violent felonies – two Texas convictions for delivery of a controlled substance and one 1985 Texas conviction for robbery. The ACCA defines a "violent felony" as an offense punishable by imprisonment for more than one year which "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson or extortion, involves use of explosives, or *otherwise* involves conduct that presents a serious potential risk of physical injury to another."[2]

The Supreme Court in *Johnson v. United States* found the "residual clause" of the ACCA to be unconstitutionally vague.[3] Williams now seeks leave to file a successive writ under 28 U.S.C. § 2255 to challenge his sentence, arguing that one of his predicate offenses – the robbery – fell under the residual clause, and that his ACCA sentence is therefore invalid after *Johnson*.

## II.

Under 28 U.S.C. § 2255(h)(2) and 28 U.S.C. § 2244(b)(2), an applicant for authorization to file a successive writ must show that "the claim relies on a

---

[1] *Teague v. Lane*, 489 U.S. 288 (1989); 28 U.S.C. § 2255(h)(2); 28 U.S.C. § 2244(b)(2); Paul J. Mishkin, *Foreword: The High Court, the Great Writ, and the Due Process of Time and Law*, 79 HARV. L. REV. 56 (1965).

[2] 18 U.S.C. § 924(e)(2)(B) (emphasis added).

[3] 135 S. Ct. 2551 (2015).

new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Williams's first habeas petition was filed and denied before the *Johnson* decision. To obtain permission to file a second or "successive" petition, he must make a "prima facie showing" that his application relies on a new rule of constitutional law retroactively applicable.[4] A "prima facie showing" is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court."[5]

## III.

## A.

Williams's first hurdle, one he easily clears, is whether *Johnson* established a new rule of constitutional law.[6] "A case announces a new rule . . . when it breaks new ground or imposes a new obligation on the government. To put it differently . . . a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."[7] In holding the residual clause of the ACCA unconstitutionally vague, *Johnson* did not follow precedent. Rather, the Court overruled two of

---

[4] 28 U.S.C. § 2244 (b)(3)(C); *see also In Re Simpson*, 555 F. App'x 369 (5th Cir. 2014) (describing prima facie standard).

[5] *Reyes-Requena v. United States,* 243 F.3d 893, 897-99 (5th Cir. 2001) (holding that prima facie standard is incorporated into § 2255).

[6] Four of our sister circuits have recently addressed *Johnson*'s retroactivity, and all agreed that it is a new rule of constitutional law. *Price v. United States*, 795 F.3d 731, 732 (7th Cir. 2015); *In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015); *In re Gieswein*, No. 15-6138, 2015 WL 5534388 at *2 (10th Cir. Sept. 21, 2015); *Pakala v. United States*, No. 15-1799, 2015 WL 6158150, at *1 (1st Cir. Oct. 20, 2015).

[7] *Chaidez v. United States,* 133 S. Ct. 1103, 1107 (2013) (citation, internal quotation marks, and brackets omitted).

its earlier cases.[8] Joining the four other circuits that have decided this issue, we hold that *Johnson* announced a new rule of constitutional law.

## B.

The next hurdle is whether the new rule in *Johnson* applies retroactively. To overcome the general bar to retroactivity of new rules on collateral review, Williams must meet one of two narrow exceptions to *Teague v. Lane*.[9] The first is "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."[10] This exception is limited in scope,[11] applying only to those cases "implicating the fundamental fairness and accuracy of the criminal proceeding" or "implicit in the concept of ordered liberty."[12] In providing guidance as to what might fall within this exception, the Court has "repeatedly referred to the rule of *Gideon v. Wainwright*," as the paradigmatic example of a watershed rule.[13] *Johnson* plainly is not such a watershed rule and no one seriously argues otherwise.

To be available to Williams, then, *Johnson* must fall within the second exception to *Teague* – as a "[n]ew substantive rule[]."[14] Under this exception, substantive rules "should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status

---

[8] *See* 135 S. Ct. at 2562–63.

[9] 489 U.S. 288 (1989).

[10] *Schriro v. Summerlin,* 542 U.S. 348, 351.

[11] *Beard v. Banks*, 542 U.S. 406, 417 (2004).

[12] *Id.*; *Teague,* 489 U.S. at 307 (quotation omitted).

[13] *Banks,* 542 U.S. at 417.

[14] *Id.*

or offense."[15] Of course, *Johnson* does not forbid the criminalization of any of the conduct covered by the ACCA – Congress retains the power to increase punishments by prior felonious conduct. It signifies that *Johnson* took down the residual clause of the ACCA on vagueness grounds, a denial of due process, which is no way forbids the regulatory objective – only insisting upon sufficient clarity as to give fair notice of how it is to be achieved.

More to the point, though, is that *Johnson* also does not forbid a certain category of punishment. As Justice Scalia explained in *Schriro v. Summerlin*, substantive rules apply retroactively "because they necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him.[16] Rules that "deprive[] the State of the power to impose a certain penalty" are retroactive,[17] but rules that merely alter the sentencing structure under which a penalty is imposed are not.[18] After *Johnson*, defendants similar to Williams may, within the bounds of the constitution, face a fifteen year sentence – Congress is not "deprived"[19] of that power. *Johnson* merely mandates that Congress require such punishment with greater clarity – fair notice to persons it engages. Therefore, *Johnson* is not available to Williams on collateral review.

---

[15] *Penry v. Lynaugh*, 492 U.S. 302(1989), *overruled on other grounds by Atkins v. Virginia,* 536 U.S. 304 (2002).

[16] 542 U.S. at 351-52 (internal citations omitted).

[17] *Penry*, 492 U.S. at 330.

[18] *See Saffle v. Parks*, 494 U.S. 484 (1990) (A rule requiring that a jury be permitted to considering mitigating evidence did not "prohibit the imposition of capital punishment on a particular class of persons" and could not be applied in a case on collateral review.).

[19] *Penry*, 492 U.S. at 330.

## IV.

In so deciding, we disagree with recent decisions in two of our sister Circuits. In *Price v. United States*,[20] the Seventh Circuit concluded that Price had made a prima facie showing for the collateral reach of *Johnson*, granting him leave to file a successive writ.[21] The court argued that, as a result of *Johnson*, "[a] defendant who was sentenced under the residual clause necessarily bears a significant risk of facing a punishment that the law cannot impose upon him."[22] But Congress *could* impose the exact punishment in *Johnson* if Congress did so with specific, not vague, language. Most recently, the First Circuit granted a similarly situated prisoner leave to file a successive writ under § 2255 in a brief opinion applying the prima facie standard.[23]

Our decision and reasoning here align with the majority in the recent Eleventh Circuit decision, *In re Rivero*.[24] Especially, we diverge from the argument, made in dissent, that *Bousley v. United States* indicates that Congress's hypothetical power to criminalize certain conduct is irrelevant to *Teague* analysis.[25] In *Bousley*, the Court determined that an earlier decision, *Bailey v. United States*,[26] interpreting the word "use" in a criminal statute, was available on collateral review, despite the fact that Congress later amended

---

[20] 795 F.3d 731.

[21] *Id.*

[22] *Id.* at 734.

[23] *Pakala v. United States*, No. 15-1799, 2015 WL 6158150 (1st Cir. 2015).

[24] 797 F.3d 986, 989 (11th Cir. 2015). The Tenth Circuit also recently denied a successive writ under *Johnson*, although our colleagues there would await Supreme Court holdings that "by strict logical necessity, dictate that the Supreme Court, itself, has made a new rule retroactive on collateral review." *In re Gieswein*, No. 15-6138, 2015 WL 5534388 (10th Cir. 2015) at *3 (internal citations omitted).

[25] 797 F.3d at 1000.

[26] 516 U.S. 137.

the statute to criminalize exactly the conduct at issue in the case. But *Bousley* was decided completely outside of the *Teague* framework, and it does not apply to *Johnson*. Chief Justice Rehnquist determined that *Teague* did not govern in *Bousley* because *Teague* "is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress."[27] But unlike *Bailey*, *Johnson* did not interpret the ACCA in service of Congressional intent – it excised as unconstitutional an entire provision of duly enacted law. Nor did it merely "explain what [the statute] has meant even since [it] was enacted," as Justice Stevens explained in his partial concurrence in *Bousley*,[28] facilitating a remand for a showing of actual innocence. Rather, *Johnson* actually overruled two of the Court's earlier cases,[29] clearly differentiating it from *Bailey*, and making a "new rule," firmly within the *Teague* framework.

## V.

It is true that Williams need only demonstrate a "sufficient showing of possible merit to warrant a fuller exploration by the district court" to obtain leave to pursue his successive writ.[30] But, the prima facie standard requires at the least a sufficient showing that *Johnson* is available to him on collateral review. Since we have concluded that it is not, his motion for authorization to file a successive 28 U.S.C. § 2255 petition is DENIED.

---

[27]*Bousley v. United States,* 523 U.S. 614, 620 (1998).

[28] *Id*. at 625.

[29] *See* 135 S. Ct. at 2562–63.

[30] *Reyes-Requena,* 243 F.3d at 897-99.