[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

No. 15-15456-G

_____

IN RE: KURT FRANKS,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

_____

Before MARCUS, MARTIN, and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

## I. BACKGROUND

Kurt Franks was sentenced to 15 years' imprisonment under the Armed

Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), as a felon in possession of a

firearm with three prior violent felony convictions.  Arguing that his sentence

should be overturned, he seeks to file a motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255.  But because he previously filed a § 2255

motion to vacate his sentence, which was denied by the district court, he can proceed with this present successive challenge only with our permission. *See* 28 U.S.C. §§ 2255(h), 2244(b)(3)(A). We, however, cannot authorize a successive § 2255 motion without first certifying that the successive motion contains a claim involving either:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). It is the applicant's duty to "make[] a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C).

Franks argues that his claim meets the second exception to the general bar against successive § 2255 motions because he relies on a new rule of constitutional law that was previously unavailable and that the Supreme Court has made retroactive to cases seeking collateral review. Specifically, in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that one provision of the ACCA—the "residual clause"—is unconstitutionally vague.[1] Franks argues that

---

[1] The ACCA defines a "violent felony" as a crime punishable by imprisonment for more than one year that "(i) has as an element the use, attempted use, or threatened use of physical force

2

his prior convictions for Florida strong arm robbery fall under the now-unconstitutional residual clause and, as a result, he no longer has three qualifying predicate convictions as required for imposition of a sentence under the ACCA.

## II. DISCUSSION

We can authorize Franks's application for a successive writ under 28 U.S.C. § 2255 only if he makes a prima facie showing that his claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2255(h)(2), § 2244(b)(2). In determining whether Franks has made this showing, however, we do not write on a clean slate. Rather, we have previously held in a published—and thereby binding—opinion that the Supreme Court has not made the new rule on which Franks relies retroactive for purposes of collateral review. *See In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015).

*Rivero* would therefore seem to settle the matter now before us. Nevertheless, the dissent asserts that because we have not yet applied *Rivero* to sentences imposed under the ACCA, we are not bound in this case by its holding. Specifically, Rivero challenged a sentence that was calculated based on the residual clause in the federal Sentencing Guidelines, whereas Franks's challenge

---

against the person of another; or (ii) is burglary, arson or extortion, involves use of explosives, or *otherwise* involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B) (emphasis added). The clause that begins with the word "otherwise" is the residual clause.

3

involves use of the residual clause found in the ACCA. And if we are in fact not bound by *Rivero*, the dissent would have us hold, contrary to the reasoning in *Rivero*, that the Supreme Court has made its rule in *Johnson* retroactive to cases on collateral review.

At the outset, we note that, since *Rivero*, our Court has addressed at least 28 applications for collateral review of ACCA sentences in which the applicant argued that the *Johnson* decision should be applied retroactively to cases seeking successive collateral relief. And in every one of these cases, the panel concluded that *Rivero* controls the disposition in ACCA cases seeking successive collateral review.[2] Granted these 28 decisions were not published, and thus they do not

---

[2]

| Case Style |
| --- |
| *In re: Dwight Rowe*, No. 15-13355 (8/24/15) |
| *In re: Ronald Hammons*, No. 15-13606 (8/31/15) |
| *In re: Stacy Lampley*, No. 15-13562 (9/1/15) |
| *In re: Stanley Seabrook*, No. 15-13625 (9/1/15) |
| *In re: Brady Adams*, No. 15-13624 (9/1/15) |
| *In re: Anthony Nix*, No. 15-13618 (9/1/15) |
| *In re: Kelvin Smith*, No. 15-13647 (9/4/15) |
| *In re: Doncey Boykin*, No. 15-13646 (9/4/15) |
| *In re: John Johnson*, No. 15-13678 (9/4/15) |
| *In re: Efrain Casado*, No. 15-13682 (9/4/15) |
| *In re: Terry Middleton*, No. 15-13683 (9/4/15) |
| *In re: Willie Sharp, Jr.*, No. 15-13795 (9/14/15) |
| *In re: George Corey*, No. 15-13753 (9/15/15) |
| *In re: Ibnawaan Safeeullah*, No. 15-13782 (9/21/15) |
| *In re: Randall Williams*, No. 15-13954 (10/2/15) |
| *In re: Christopher Carter*, No. 15-14106 (10/13/15) |
| *In re: Gwendolyn Joe*, No. 15-14320 (10/16/15) |
| *In re: Shawn Nice*, No. 15-14330 (10/20/15) |
| *In re: Alex Mitchell*, No. 15-14329 (10/27/15) |

constitute binding precedent. Nevertheless, with the exception of the chief judge, each active judge on our Court has served on several of the panels issuing these decisions. And each panel decision has been unanimous. We find this broad consensus to be a persuasive factor in our own consideration of whether *Rivero* binds us in this case.

But even had our Court not consistently reached a different conclusion than the dissent now urges here, we would nevertheless conclude that *Rivero* forecloses any argument that *Johnson* applies retroactively to Franks's successive collateral attack. Indeed, the dissent acknowledges that "the reasoning of *Rivero* suggests that the retroactivity analysis is identical for both types of application for relief." (*Dissent* at 1). We agree and now set out that reasoning.

As *Rivero* held, the ruling in *Johnson* on which Franks relies sets out a new rule of constitutional law. *Rivero*, 797 F.3d at 989. But that is not enough. To overcome the presumptive bar to retroactivity of new rules on collateral review set out in *Teague v. Lane*, 489 U.S. 288, 305–06 (1989) (plurality opinion), a

| | |
|---|---|
| *In re: Johnny Olds*, No. 15-14672 (11/4/15) | |
| *In re: Decarlos Mitchell*, No. 15-14681 (11/12/15) | |
| *In re: Derrick Owens*, No. 15-14972 (11/23/15) | |
| *In re: Charles Harper*, No. 15-15103 (12/2/15) | |
| *In re: Glen Matthews*, No. 15-15216 (12/8/15) | |
| *In re: Andre Jackson*, No. 15-15200 (12/11/15) | |
| *In re: Javonne Wilks*, No. 15-15434 (12/23/15) | |
| *In re: Corey Mims*, No. 15-15521 (12/29/15) | |
| *In re: Jawana Jackson*, No. 15-15381 (12/31/15) | |

petitioner must meet one of two narrow exceptions. *Rivero*, 797 F.3d at 988. The first is "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (quotation omitted). "[N]o one seriously argues" that *Johnson* qualifies for retroactivity as a watershed rule. *In re Williams*, 806 F.3d 322, 325 (5th Cir. 2015);[3] *see also Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (observing that "in the years since *Teague*, [the Supreme Court] ha[s] rejected *every* claim that a new rule satisfied the requirements for watershed status" (emphasis added)).

Instead it is the second exception that was potentially applicable in *Rivero* and that is pertinent here:  the exception for "[n]ew substantive rules." *Schriro*, 542 U.S. at 351 (emphasis omitted). We concluded in *Rivero* that *Johnson* did announce "a new substantive rule of constitutional law." *Rivero*, 797 F.3d at 989. Yet, for such a new rule to apply retroactively on collateral review, the Supreme Court must say that it does. *Id.* In fact, for these purposes, "the Supreme Court is the only entity that can 'make' a new rule retroactive." *Id.* (quoting *Tyler v. Cain*, 533 U.S. 656, 663 (2001)) (brackets omitted). Further, "[w]hen the Supreme Court makes a rule retroactive for collateral-review purposes, it does so unequivocally, in

---

[3] The Fifth Circuit agreed with this Court's conclusion that *Johnson* was not retroactive as to collateral-relief challenges, but it took a slightly different path in reaching its conclusion. The Fifth Circuit concluded that *Johnson* is neither a watershed rule nor a new substantive rule. *Id.* at 325–26. We concluded in *Rivero* that *Johnson* was a substantive rule, but that it had not been made retroactive by the Supreme Court.

6

the form of a holding." *Rivero*, 797 F.3d at 989 (quoting *In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005)). *Johnson*, which was decided on direct review, did not "expressly hold" that it should be applied retroactively. *Rivero*, 797 F.3d at 989 (quoting *In re Moss*, 703 F.3d 1303, 1303 (11th Cir. 2013)) (brackets omitted). Finally, the Supreme Court has not subsequently applied *Johnson* to a case on collateral review. *Rivero*, 797 F.3d at 989.

Yet even though it is up to the Supreme Court to hold that a particular rule is retroactive for purposes of successive collateral review, we acknowledged in *Rivero* that there are two types of new substantive rules of constitutional law that the Supreme Court has "necessarily dictated" are to be applied retroactively on collateral review. *Id.* at 990 (quoting *In re Anderson*, 396 F.3d at 1339) (brackets omitted). First, we apply retroactively on collateral review rules that render inviolate "certain kinds of primary, private individual conduct." *Teague*, 489 U.S. at 311 (quotation omitted). For example, neither the state nor federal government can proscribe private, homosexual sodomy, *see Lawrence v. Texas*, 539 U.S. 558 (2003), or burning the American flag in protest, *see Texas v. Johnson*, 491 U.S. 397 (1989). "Those rules operate retroactively on collateral review because they 'place particular conduct or persons covered by a statute beyond the State's power to punish.'" *Rivero*, 797 F.3d at 990 (quoting *Schriro*, 542 U.S. at 352) (brackets omitted). Of course, *Johnson* does not fall into this class of cases.

7

"Second, we apply retroactively on collateral review a new rule that prohibits a category of punishment for certain offenders or offenses." *Rivero*, 797 F.3d at 990. Examples include the rule that the Eighth Amendment does not allow execution of a mentally retarded criminal, *see Atkins v. Virginia*, 536 U.S. 304 (2002), and the rule that the Eighth Amendment does not allow execution of a child rapist, *see Kennedy v. Louisiana*, 554 U.S. 407 (2008). We held in *Rivero* that *Johnson* likewise does not fit within this second category of new substantive rules that apply retroactively on collateral appeal because "*Johnson* neither prohibits Congress from punishing a criminal who has a prior conviction for [a specified offense] nor prohibits Congress from increasing that criminal's sentence because of his prior conviction." *Rivero*, 797 F.3d at 990. In short, based on the above analysis, *Rivero* concluded that the Supreme Court has not necessarily dictated that the rule in *Johnson* should be applied retroactively. *Id.* at 989.

The dissent argues, however, that even though the Supreme Court has not explicitly held that *Johnson* should be deemed retroactive for collateral-relief purposes, an opinion can nonetheless be given retroactive effect where there are "multiple holdings that logically dictate the retroactivity of the new rule." (*Dissent* at 3). And the dissent posits that there are multiple holdings here from which one could conclude that the Supreme Court has constructively given retroactive effect to *Johnson*. But again, *Rivero* dealt with that argument as well and concluded that

8

there were "[n]o combination of holdings of the Supreme Court [that] 'necessarily dictate' that *Johnson* should be applied retroactively on collateral review."[4] *Rivero*, 797 F.3d at 989.  For sure, the dissent disagrees with *Rivero*'s analysis, but that is not a dispute that a subsequent panel is empowered to referee because "[u]nder the prior precedent rule, we are bound to follow a prior binding precedent 'unless and until it is overruled by this court en banc or by the Supreme Court.'" *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quoting *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003)).

Finally, nothing in *Rivero*'s analysis suggested that its reasoning—or the conclusion derived from that reasoning—depended on the fact that Rivero's particular sentence was calculated based on the Sentence Guidelines, as opposed to the ACCA.  Accordingly, that distinction cannot give us license to sidestep the broad and clear holding of *Rivero* that "*Johnson* did not establish a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court." 797 F.3d at 988.[5]

---

[4] Since *Rivero*, the Tenth Circuit has also addressed the dissent's "multiple holdings" argument. *In re Gieswein*, 802 F.3d 1143, 1147 (10th Cir. 2015).  The Tenth Circuit squarely rejected that argument and concluded, as we did in *Rivero*, that *Johnson* does not apply retroactively to a successive collateral challenge.  *Id.*; *see also In re Henry*, 757 F.3d 1151, 1160–61 (11th Cir. 2014) (contrasting a scenario in which multiple Supreme Court holdings necessarily dictate retroactivity with one in which such holdings do not).

[5] The dissent notes that this issue—whether *Johnson* applies retroactively on collateral appeal—has hatched a circuit split.  And it is true that the circuits identified by the dissenting opinion in its footnote 3 have granted applications to file second or successive § 2255 motions based on *Johnson*.  But it should be noted that, other than the Sixth and the Seventh Circuits, none of the

In summary, consistent with our rulings in each of the 28 similar applications that have preceded this application, we conclude that *Rivero* bars Franks's attempt to mount a successive collateral challenge of his ACCA sentence. For that reason, his application for authorization to file a successive writ under 28 U.S.C. § 2255 is **DENIED**.

---

circuits mentioned by the dissent have yet held that the Supreme Court made *Johnson* retroactive to ACCA cases on collateral review. The First and Eighth Circuits concluded that, based on the government's concession that *Johnson* applied retroactively on collateral review, a prima facie case for leave to proceed had been made by the applicant. *See Pakala v. United States*, 804 F.3d 139, 139–40 (1st Cir. 2015) (per curiam) ("In view of the government's concessions, we certify that Pakala has made the requisite *prima facie* showing that the new constitutional rule announced in *Johnson* 'qualifies as a basis for habeas relief on a second or successive petition, and so we allow him to file his petition with the district court.'" (quoting *Evans-Garcia v. United States*, 744 F.3d 235, 240 (1st Cir. 2014))); *Woods v. United States*, 805 F.3d 1152, 1154 (8th Cir. 2015) ("Based on the government's concession, we conclude that Woods has made a prima facie showing that his motion contains 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" (quoting 28 U.S.C. § 2255(h)(2))). The Ninth Circuit granted, without any analysis, the petitioner and government's Joint Emergency Motion Under Circuit Rule 27-3 For An Order Authorizing The District Court To Consider A Successive Motion Under 28 U.S.C. § 2255. *United States v. Striet*, No. 15-72506 (9th Cir. Aug. 25, 2015) (ECF No. 2). The Second Circuit similarly held that the petitioner made a prima facie showing, but then directed the district court to decide in the first instance whether *Johnson* applies retroactively on collateral review. *Rivera v. United States*, No. 13-4654 (2d Cir. Oct. 5, 2015) (ECF No. 44) ("Since this Court has determined only that Petitioner has made a prima facie showing that he has satisfied the successive motion requirements, *see* 28 U.S.C. § 2244(b)(3)(C), the district court is directed to address . . . whether . . . *Johnson* announced a new rule of law made retroactive to cases on collateral review.").

But given this Court's ruling in *Rivero*, we have no basis to conclude that Franks has made a prima facie case. Because *Rivero* held that the Supreme Court has not made *Johnson* retroactive, Franks necessarily fails to make the requisite showing.

10

MARTIN, J., dissenting:

I dissent because I believe Johnson v. United States, __ U.S. __, 135 S. Ct. 2551 (2015), announced a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, at least for defendants whose sentences were required by the Armed Career Criminal Act (ACCA).

I.

In order to file a second or successive § 2255 motion, Mr. Franks must make a prima facie showing that his motion relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Johnson held that ACCA's residual clause is unconstitutionally vague. I agree with the majority that Johnson created "a new rule of constitutional law" and that this rule "was previously unavailable" to Mr. Franks. See Maj. Op. at 5; In re Rivero, 797 F.3d 986, 993 (11th Cir. 2015). But, unlike the majority, I believe the Supreme Court "made" Johnson retroactive to cases on collateral review.

The Supreme Court explained in Tyler v. Cain, 533 U.S. 656, 121 S. Ct. 2478 (2001), that "'made' means 'held' and, thus, the requirement is satisfied only if [the] Court has held that the new rule is retroactively applicable." Id. at 662, 121 S. Ct. at 2482. The Court recognized, though, that it "can make a rule retroactive over the course of two cases." Id. at 666, 121 S. Ct. at 2484. Justice O'Connor

1

filed a concurrence to "explain more fully" what this means. Id. at 668, 121 S. Ct. at 2485 (O'Connor, J., concurring). She wrote that the Court could make a rule retroactive "through multiple holdings that logically dictate the retroactivity of the new rule." Id. For instance, she explained,

> if we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have 'made' the given rule retroactive to cases on collateral review.

Id. at 668–69, 121 S. Ct. at 2485–86.

Four other Justices endorsed Justice O'Connor's reasoning. See id. at 670–73, 121 S. Ct. at 2486–88 (Breyer, J., dissenting). So has this Court. See, e.g., In re Henry, 757 F.3d 1151, 1160 (11th Cir. 2014) ("[L]ike our sister circuit courts, we have recognized 'retroactivity by logical necessity.'"); In re Holladay, 331 F.3d 1169, 1172–73 (11th Cir. 2003) (applying this reasoning to hold that Penry v. Lynaugh, 492 U.S. 302, 109 S. Ct. 2934 (1989), "made" retroactive the rule set forth in Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242 (2002)).

## II.

This case presents just the circumstance Justice O'Connor described. Mr. Franks claims that he received a mandatory sentence of 15 years in prison because of ACCA's residual clause. Johnson held that sentences based on this clause are

2

unconstitutional. Without the residual clause, the statutory maximum for Mr. Franks's crime would have been 10 years in prison. 18 U.S.C. § 924(a)(2). That means an Article III court had no power to lawfully impose a 15-year sentence on Mr. Franks. "[T]here are serious, constitutional, separation-of-powers concerns that attach to sentences above the statutory maximum penalty authorized by Congress." Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1283 (11th Cir. 2013). There is another problem too: cases that narrow the reach of criminal statutes "apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose on him." Schriro v. Summerlin, 542 U.S. 348, 352, 124 S. Ct. 2519, 2522–23 (2004) (quoting Bousley v. United States, 523 U.S. 614, 620, 118 S. Ct. 1604, 1610 (1998)).

Bousley and Summerlin "logically dictate the retroactivity of" Johnson. Tyler, 533 U.S. at 668, 121 S. Ct. at 2485 (O'Connor, J., concurring). Bousley addressed the retroactivity of Bailey v. United States, 516 U.S. 137, 116 S. Ct. 501 (1995), which held that "using" a firearm in violation of 18 U.S.C. § 924(c)(1) requires "active employment of the firearm." Id. at 144, 116 S. Ct. at 506. The Supreme Court held that Bailey applied retroactively because "decisions of [the] Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-

3

making authority to proscribe, necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." Bousley, 523 U.S. at 620–21, 118 S. Ct. at 1610 (quotations omitted). The Court stressed that "it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in Bailey." Id. at 621, 118 S. Ct. at 1610. Then, after Tyler was decided, Summerlin reiterated that "decisions that narrow the scope of a criminal statute by interpreting its terms . . . apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." 542 U.S. at 351–52, 124 S. Ct. at 2522–23 (quoting Bousley, 523 U.S. at 620, 118 S. Ct. at 1610).

Johnson "narrow[s] the scope of" ACCA "by interpreting its terms." Id. Specifically, it interprets ACCA's residual clause as unconstitutional. See Johnson, 135 S. Ct. at 2562 (stating that its reading of ACCA was the "only plausible interpretation" (quotation omitted)); id. ("[T]he provision remains a 'judicial morass that defies systemic solution,' 'a black hole of confusion and uncertainty' that frustrates any effort to impart 'some sense of order and direction.'" (quoting United States v. Vann, 660 F.3d 771, 787 (4th Cir. 2011) (Agee, J., concurring)). Johnson makes it unlawful to impose a sentence of more than ten years for an 18 U.S.C. § 922(g) conviction based on ACCA's residual

4

clause. Johnson thus "necessarily" creates "a significant risk" that Mr. Franks "faces a punishment that the law cannot impose upon him." Summerlin, 542 U.S. at 352, 124 S. Ct. at 2522–23; see also United States v. Bushert, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993) ("It is both axiomatic and jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute."). This means Johnson applies retroactively for defendants like Mr. Franks whose sentences were required by ACCA.

### III.

Our decision in Rivero did not require us to deny the application in this case. Rivero denied an application to challenge a sentence that was calculated based on a residual clause in the Sentencing Guidelines. See Rivero, 797 F.3d at 989. Johnson, in contrast, reversed a sentence required by ACCA's residual clause. See Johnson, 135 S. Ct. at 2563. Mr. Franks also seeks to challenge a sentence required by ACCA's residual clause.

The question of whether Johnson applies retroactively to ACCA cases on collateral review was not before us in Rivero, and we never extended Rivero to ACCA cases in a published opinion until now. Instead, a month after the Rivero ruling, we appointed the Federal Public Defender for the Southern District of Florida to represent Mr. Rivero and ordered additional briefing. Both the government and Mr. Rivero filed briefs, and the government also filed a

5

"Memorandum for the United States Regarding Applications for Leave to File Second or Successive 2255 Motions Based on Johnson v. United States, 135 S. Ct. 2551 (2015)" ("Gov't Memo") (filed by the Clerk of Court in this and other relevant cases).

These pleadings reveal that the two sides disagree about what we should do with inmates like Mr. Rivero who are challenging the application of the Sentencing Guidelines. But they agree when it comes to the issue in this case: both say that inmates challenging sentences required by the residual clause of ACCA can file second or successive § 2255 motions based on Johnson. "The government's position is that the Court should grant authorization [to file second or successive § 2255 motions] where a defendant makes a prima facie showing that, in light of Johnson, he was erroneously sentenced under the Armed Career Criminal Act." Gov't Memo at 2. In the government's view, "[a] defendant erroneously classified and sentenced under the ACCA has a compelling interest in avoiding detention beyond the maximum term provided by Congress for his crime, and there is no legitimate countervailing societal interest in his continued incarceration without legislative approval." Id. at 27. This is my view as well.

## IV.

Johnson is an important case. This Court should not have denied the application of Johnson to potentially hundreds of people based on pro se pleadings

6

and without oral argument or briefing.[1]  We did not have to proceed in this way. We could have appointed Mr. Franks a lawyer and heard oral argument on this complex and important question of law.

We also could have certified the question to the Supreme Court.  The Supreme Court can hear cases pursuant to "certification at any time by a court of appeals of any question of law in any civil or criminal case as to which instructions are desired."  28 U.S.C. § 1254(2).  Of course, our certifying a question in no way obligates the Supreme Court to accept review.  See S. Ct. R. 19.3.  Instead, it simply vests the Court with discretion to address the question if it wishes.  Here, certification is the only way the Court will have that option.  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), our denial of Mr. Franks's application is neither appealable nor subject to a petition for writ of certiorari.  28 U.S.C. § 2244(b)(3)(E).  That means the only way Mr. Franks can seek Supreme Court review of our order is through certification under 28 U.S.C. § 1254(2).  Indeed, we have previously declined to certify an issue in part because

---

[1] Indeed, the majority counts some twenty-eight unpublished orders denying applications to people like Mr. Franks.  To my knowledge, none of these orders were based on briefing or oral argument.  Indeed, despite the complexity and importance of the legal question here, this Court has yet to hear oral argument.  Twenty-eight wrongs don't make a right.  But it does show that this published order affects the imprisonment of a lot of people.

With this in mind, the United States has stated that if this Court will "continue to deny future applications for leave to file successive Section 2255 motions challenging erroneous ACCA enhancements, then the government, with the Solicitor General's approval, respectfully urges the Court to convene en banc to decide this important issue."  Gov't Memo at 22.  The government is right about this.

7

certiorari remained an option. See Evans v. Stephens, 387 F.3d 1220, 1228 n.14 (11th Cir. 2004) (en banc). By the same logic, the fact that certiorari was not available is a reason to certify the question.

There are three more reasons I would like for our court to certify this question. First, Johnson was decided on June 26, 2015. Inmates therefore have until June 26, 2016, to seek collateral relief based on Johnson. See 28 U.S.C. § 2255(f)(3); Dodd v. United States, 545 U.S. 353, 357, 125 S. Ct. 2478, 2481 (2005). That means this issue is both extremely important and extremely time-sensitive. Second, if the majority is correct that the Supreme Court has not "made" Johnson retroactive, we ought to facilitate rather than impede the Supreme Court's opportunity to take this step. Without certification, the Supreme Court can't review our reasoning in this case. That's why I believe we should have made absolutely sure we are getting the reasoning right, with the benefit of lawyers and oral argument.[2] Barring that, we at least should have given the Supreme Court a chance to guide us.

The third reason to certify is constitutional. In Felker v. Turpin, 518 U.S. 651, 116 S. Ct. 2333 (1996), the Supreme Court held that AEDPA's "new

---

[2] We have in the past granted briefing and oral argument in cases like this. See In re Davis, 565 F.3d 810 (11th Cir. 2009). The applicant in Davis also filed a motion to file a second or successive habeas petition. The panel ordered briefing, entered a conditional stay, allowed the filing of amicus briefs, heard oral argument, and then denied the application six months after the original application had been filed. See CMS Docket, In re Davis, No. 08-16009.

8

restrictions on successive petitions . . . do not amount to a 'suspension' of the writ contrary to Article I, § 9" of the Constitution. Id. at 664, 116 S. Ct. at 2340. Three Justices filed a concurring opinion in Felker observing that although AEDPA precluded certiorari review over orders denying applications to file second or successive habeas applications, "[t]he statute's text does not necessarily foreclose all of [the Supreme Court's] appellate jurisdiction" given the statutory authority to certify questions under § 1254(2). Id. at 666, 116 S.Ct. at 2341 (Souter, J., concurring); see also id. at 666 (Stevens, J., concurring). Justice Souter added, "if it should later turn out that statutory avenues other than certiorari for reviewing a gatekeeping determination were closed, the question whether the statute exceeded Congress's Exceptions Clause power would be open. The question could arise if the courts of appeals adopted divergent interpretations of the gatekeeper standard." Id. at 667, 116 S. Ct. at 2342 (Souter, J., concurring) (footnote omitted).

That's what has happened here: the courts of appeal disagree on the gatekeeper standard for Johnson claims.[3] This disagreement thwarts the

---

[3] The First, Second, Sixth, Seventh, Eighth, and Ninth Circuits are granting applications to file second or successive § 2255 motions based on Johnson. See, e.g., In re Watkins, No. 15-5038, __ F.3d __, 2015 WL 9241176 (6th Cir. Dec. 17, 2015); Woods v. United States, 805 F.3d 1152, 1154 (8th Cir. 2015) (per curiam); Rivera v. United States, No. 13-4654 (2nd Cir. Oct. 5, 2015) (ECF No. 44); United States v. Striet, No. 15-72506 (9th Cir. Aug. 25, 2015) (ECF No. 2); Pakala v. United States, 804 F.3d 139, 139 (1st Cir. 2015) (per curiam); Price v. United States, 795 F.3d 731, 735 (7th Cir. 2015). The Fifth and Tenth Circuit are not. See In re Williams, 806 F.3d 322, 325–26 (5th Cir. 2015); In re Gieswein, 802 F.3d 1143 (10th Cir. 2015) (per curiam). The Third, Fourth, and D.C. Circuits don't appear to have ruled on the question yet. However,

9

availability and administration of the writ of habeas corpus. We should either rehear this case or provide the Supreme Court an opportunity to resolve this disagreement. As the law stands today, relief and imprisonment depend on where an applicant lives, not the merits of his claims.

---

the Fourth Circuit has set the question for oral argument later this month, see In re Hubbard, 15-276 (4th Cir. Nov. 24, 2015) (ECF No. 16), and then granted bail pending appeal to an inmate who served over ten years of an ACCA sentence and then applied to file a second or successive motion, see In re Scott, No. 15-291 (4th Cir. Dec. 22, 2015) (ECF No. 11).

Notably, the courts that have held Johnson is not retroactive have done so based on "divergent interpretations of the gatekeeper standard." Felker, 518 U.S. at 667, 116 S. Ct. at 2342 (Souter, J., concurring). Compare Rivero, 797 F.3d at 989–90 (holding that Johnson is not retroactive because it creates a substantive rule that Congress could override); with Williams, 806 F.3d at 322 (holding that Johnson is not retroactive because it creates a procedural rule rather than a substantive one).